JAMES CAMPBELL *et al.*, as Coadm'rs of the Estate of Ronald J. Campbell, Deceased, Plaintiffs-Appellants, v. COLIN F. WHITE, Defendant-Appellee.

Fourth District   No. 4—90—0413

Opinion filed January 23, 1991.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Thorpe Facer, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Scott D. Spooner, Special Assistant Attorney General, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the plaintiffs, James and Lois Campbell, coadministrators of the estate of Ronald J. Campbell, deceased, from an order of the circuit court of Champaign County dismissing plaintiffs' complaint against defendant Colin F. White, an Illinois State Police officer. On appeal, the only issue is whether the trial court properly dismissed the complaint against a State trooper for the reason that proper subject-matter jurisdiction of this claim rests in the Court of Claims and not in the circuit court, or because defendant is immune under the theory of public-official immunity.

This is the second appeal in this matter. In the earlier appeal, this court set aside a default judgment against defendant. *Campbell v. White* (1989), 187 Ill. App. 3d 492, 543 N.E.2d 607.

In the earlier decision, this court recognized plaintiffs' complaint is framed in two counts, negligence and wilful and wanton misconduct. The complaint sought damages for the wrongful death of plaintiffs' son, allegedly resulting from a collision involving a police car operated by defendant. However, in the earlier appeal, a stipulation of facts offered by the parties in a companion Federal case was not properly before the trial court and, as a result, this court could not

decide the question of subject-matter jurisdiction because of insufficient facts.

On remand, defendant filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code), suggesting plaintiffs' claim against defendant was barred by "affirmative matter avoiding the legal effect of or defeating the claim," to wit: subject-matter jurisdiction was properly in the Court of Claims. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) Defendant also suggested the complaint is barred by public-official immunity. At the hearing on the motion to dismiss, defendant asked the trial court to take judicial notice of the stipulation, which states:

"On or about May 25, 1985, at approximately 11:35 p.m., plaintiffs' decedent, Ronald J. Campbell, was eastbound on Interstate 72 in Piatt County, Illinois. At said time and place plaintiffs' decedent was operating a 1981 Honda CB 900 F motorcycle. Plaintiffs' decedent was accompanied by James Miller of Urbana, Illinois, who was also operating a motorcycle in an eastbound direction on Interstate 72.

At or around 11:37 p.m. on May 25, 1985, plaintiffs' decedent lost control of his motorcycle causing him and his motorcycle to thereafter travel into the median which separates the eastbound and westbound lanes of Interstate 72. Prior to losing control of his motorcycle, plaintiffs' decedent and James Miller passed defendant, Trooper Colin F. White, whose vehicle was at the time positioned in a westward-facing direction in the median of Interstate 72. Trooper White was in the process of adjusting his vehicle's stationary radar unit when plaintiffs' decedent and James Miller passed him going eastward. After plaintiffs' decedent and Mr. Miller passed defendant, Trooper White began to pursue them in an easterly direction along Interstate 72. At all times relevant to this lawsuit, Trooper White was acting in his capacityi [sic] as a duly-authorized patrol officer for the Illinois State Police, and was acting under color of state law.

As plaintiffs' decedent and James Miller traveled eastward on Interstate 72, they did so at speeds well in excess of the established limit of fifty-five (55) miles per hour. Plaintiffs' decedent was not wearing a helmet while operating his motorcycle and was clothed in blue jeans and a black leather jacket.

As plaintiffs' decedent and James Miller travelled eastward along Interstate 72, they were pursued by Trooper White of the Illinois State Police. During the conduct of said pursuit,

Trooper White chose not to operate his vehicle's siren or oscillating lights. Trooper White was able to accelerate his vehicle to a speed of approximately one hundred and nine (109) miles per hour during the course of the subject pursuit.

Plaintiffs' decedent eventually came to rest in the median between the eastbound and westbound lanes of Interstate 72. Thereafter, plaintiffs' decedent stepped into the passing lane of eastbound Interstate 72 and was struck by defendant's police vehicle and died."

The record does not disclose whether or to what extent the trial court relied on the stipulation. However, the record also does not disclose that plaintiffs ever objected to a consideration of it by the trial court, and therefore the stipulation will be deemed a part of the record on appeal.

In addition, defendant's brief refers to an affidavit filed by plaintiffs in the Federal case in which plaintiffs acknowledged they were seeking review of the Illinois State Police policy allowing for high-speed pursuit without flashing lights or sirens by seeking a monetary judgment against defendant. Defendant suggests that, because a certified copy of the affidavit was appended to his reply brief in the earlier appeal, that affidavit has become part of the record in this case. That is incorrect. A party cannot insert a matter into the record by appending it to a reply brief on appeal: First, briefs are arguments and are not part of the evidentiary or common law record; second, the reply brief cannot be used to bring to the attention of the reviewing court matters which were not raised in the party's original brief (107 Ill. 2d R. 341(g)); and third, defendant does not indicate that this affidavit by plaintiffs was ever presented to the trial court, nor does the record on appeal demonstrate that it was. Therefore, the affidavit of plaintiffs filed in Federal court will not be considered in this appeal.

Attached to defendant's motion to dismiss was the affidavit of Kathleen A. O'Bryen, a management operations analyst in the policy development section of the Illinois State Police Department's division of administration. Her job entails maintaining department directives and operation manuals. The operations manual in effect on May 25, 1985, includes directive ENF 4, relating to emergency and pursuit driving. The directive, which was attached to O'Bryen's affidavit, states in relevant part:

"ENF 4   EMERGENCY AND PURSUIT DRIVING
  4—1    *PURPOSE*
         This order establishes policy and procedure for emergency and pursuit driving.

#### 4—2 DECLARATION

It is difficult to establish policy and procedure for emergency and pursuit driving that is specific enough to provide meaningful guidance, yet broad enough to allow the individual sufficient discretion to function effectively. The order is intended to balance the two objectives to assist the officer in making decisions. Each decision must of course be based upon the conditions and circumstances existing at that time. Ultimately, the test will be the 'reasonableness' of the course of action chosen. It. is no disgrace to terminate a pursuit because the conditions are considered hazardous· or unreasonable. It is good judgment.

#### 4—3 POLICY

It is the policy of the Department to:

(a) Conform to statutes regulating the operation of authorized emergency vehicles;

(b) Respond to emergency calls rapidly but with due regard for the safety of life and property;

(c) Make every reasonable effort to apprehend a fleeing violator.

#### 4—4 AUTHORITY

The authority to disregard certain provisions of the Illinois Vehicle Code while responding to an emergency call or when in the pursuit of an actual or suspected violator is derived from Section 11—205 of the Illinois Vehicle Code.

#### 4—5 GUIDELINES-PURSUITS

(a) It is the position of the Department that law violators be apprehended whenever it is feasible under the existing conditions. It is not expected, however, that a person be pursued to the point where the life of the officer, the violator, or others is placed in unnecessary jeopardy.

(b) Officers should be prepared to discontinue the pursuit if it becomes unreasonable under the circumstances to continue the chase. Vehicle Marking is an important part of the circumstances. Pursuits should not normally be continued through areas of heavy traffic congestion, through school zones when children are going to and from school, or in other situations where there exists a high expectation of serious injury or death. When engaged in a pursuit, and when deciding whether the pursuit should be continued, officers should weigh the seriousness of the violator's suspected crime against the potential for death or injury and the duration and overall distance· that

may be traveled if the pursuit continues.

\*\*\*

4—6   *PROCEDURE*

\*\*\*

(b)  Use of Rotating/Flashing Red Light(s)

The rotating/flashing red light(s) will be lighted during pursuit or when disregarding any provision of the Illinois Vehicle Code when responding to an emergency call, except where a covert approach is necessary due to the nature of the crime.

(c)  Use of Siren

The siren will be used as needed during response to emergency calls or during pursuit to warn pedestrians and other drivers of the approach thereof.

(d)  Use of ISPERN

Whenever possible, the ISPERN System will be used during pursuit in an effort to minimize the need for continued pursuit."

On March 27, 1990, the trial court heard arguments of counsel regarding the motion to dismiss, and took the matter under advisement. On May 29, 1990, the trial court dismissed the complaint with the following explanation:

"At the time of the incident, about which Plaintiffs complain in their complaint, Defendant was an Illinois State Police Officer, acting within the scope of his employment, and was engaged in an activity that is uniquely governmental, a high speed police pursuit. Although pleaded as cause of action against Defendant, as an individual, Plaintiff's [*sic*] complaint is, in legal effect, a claim against the State of Illinois. The complaint must, therefore, be heard in the Court of Claims and not in the Circuit Court."

Initially, the standard of review should be considered. Plaintiffs refer to *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. *Pedrick* dealt with the standards for directing verdicts and entering judgments *n.o.v. Pedrick* had absolutely nothing to do with the dismissal of a complaint for lack of subject-matter jurisdiction. The case at bar presents a question relative to a stage in the proceedings quite distinct from that presented in *Pedrick*.

■■■ A section 2—619 motion to dismiss affords the parties and the court a means of disposing of issues of law or of easily proved facts at the onset of a case. If defects are not apparent on the face of the pleadings, affidavits may be employed to bring to light affirmative

matters which would bar litigation (*Cramsey v. Knoblock* (1989), 191 Ill. App. 3d 756, 547 N.E.2d 1358). However, there are limitations to the use of such a motion. In *Michel v. Gard* (1989), 181 Ill. App. 3d 630, 636-37, 536 N.E.2d 1375, 1379-80, this court stated:

> "A section 2—619 motion is not an appropriate method for a defendant to utilize merely to controvert the allegations of ultimate facts in the complaint. In deciding a section 2—619 motion, the trial court can decide conflicting claims on the basis of proper pleadings, supporting affidavits, counteraffidavits, and any evidence offered where no jury demand has been made or where no issue to be resolved by the jury is involved. After hearing the motion, the trial court may resolve genuine issues of material fact, rather than just determine their existence, but the trial court cannot weigh conflicting affidavits. (*In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 430 N.E.2d 727.) Where the matters claimed in the affidavit as a defense to the cause of action are nothing more than the evidence which defendant would expect to present in contesting facts alleged in the complaint, then the affidavits are insufficient to support a motion to dismiss based on ' "affirmative matter avoiding the legal effect of or defeating the claim." ' *Venezky v. Central Illinois Light Co.* (1988), 168 Ill. App. 3d 612, 613, 522 N.E.2d 901, 902; *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645."

In reviewing the granting of a motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true, and the test for determining the propriety of granting the motion to dismiss is whether it appears no set of facts may be proved so as to entitle plaintiffs to recover from defendant. (*Cramsey*, 191 Ill. App. 3d 756, 547 N.E.2d 1358.) Conclusions unsupported by allegations of specific facts upon which the conclusion rests will not be considered. (*Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923.) As a result, it has been said that a reviewing court, in construing the propriety of granting a motion to dismiss, is concerned only with questions of law presented by the pleadings. *People ex rel. Lee v. Kenroy, Inc.* (1977), 54 Ill. App. 3d 688, 370 N.E.2d 78; *Lowrie*, 50 Ill. App. 3d 376, 365 N.E.2d 923.

On the merits, the obvious place to start the analysis is with a review of what was said in the opinion for the earlier appeal. In that opinion, this court indicated defendant relied on language in *Oppe v. State of Missouri* (1988), 171 Ill. App. 3d 491, 525 N.E.2d 1189, *appeal denied* (1988), 122 Ill. 2d 579, 530 N.E.2d 250, relating to public-

official immunity and to subject-matter jurisdiction, two distinct and separate concepts. While no extended discussion of public-official immunity was presented, the earlier decision in this case did offer the following discussion regarding subject-matter jurisdiction:

"In *Oppe*, this court decided that a suit against the Illinois Department of Law Enforcement and individual State troopers to recover damages for injuries resulting from a collision following a high-speed chase of an escapee from a Missouri prison must be brought in the Court of Claims. The plaintiffs attempt to avoid the same result here by relying on *Kaiser v. Emrich* (1980), 84 Ill. App. 3d 775, 406 N.E.2d 207, and *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035.

*Kaiser* decided a suit against a police officer involved in an intersection collision while driving a patrol car could be brought in the circuit court. In another automobile accident case, the *Bartholomew* court, after determining the defendant was not an employee of the State of Illinois, discussed the *Kaiser* decision at length. The *Bartholomew* court indicated that the statute relied on in *Kaiser* (Ill. Rev. Stat. 1977, ch. 127, par. 35.9(m) (now Ill. Rev. Stat. 1987, ch. 127, par. 63b4(k))) was not intended to have a jurisdictional effect and noted that nongovernmental activities forming the basis of allegations of negligence need not be asserted in the Court of Claims. A police officer driving in hot pursuit of a violator of the law is clearly exercising a uniquely governmental function.

In *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 270, this court discussed the standards for determining whether the circuit court had subject-matter jurisdiction of an action against a former program coordinator at Southern Illinois University or whether the cause must be heard in the Court of Claims:

'To summarize, we believe that where, as here, there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee. As such, the claim involves actions which may be attributed to the State.'

As the *Robb* opinion discussed, an action seeking monetary

damages for a past harm which has the potential to control actions of the State or to subject the State to liability must be brought in the Court of Claims.

In the case at bar, even though it is not alleged defendant was acting beyond the scope of his authority, the record does not contain sufficient facts from which this court can determine whether defendant was, in fact, acting outside the scope of his authority or whether a policy exists within the Department of Law Enforcement concerning high-speed pursuit without oscillating lights being activated, as defendant suggests, such that a policy of the State would be inhibited by an adverse ruling against defendant herein." (*Campbell v. White* (1989), 187 Ill. App. 3d 492, 506-07, 543 N.E.2d 607, 616-17.)

The decision in *Oppe* also included the following discussion of the subject-matter jurisdiction of a case based on a claim of negligence arising out of an incident involving the high-speed chase of an escaped felon:

"Any suit sounding in tort against the State must be brought in the Court of Claims. (Ill. Rev. Stat. 1987, ch. 127, par. 801; ch. 37, par. 439.8(d).) A suit against a State agency or its employees concerning matters in which the defendants represent the State in their actions and in liability is considered a suit against the State even though the State is not a formal party of record. (*Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 396 N.E.2d 1150.) In other words, the action is regarded as against the State if the State is really the party from which plaintiffs seek relief. (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131.) Where, as here, the State has the duty to defend and may have a duty to indemnify the employee for any judgment awarded (Ill. Rev. Stat. 1987, ch. 127, par. 1302), then the action must be considered to be against the State. For this reason, the Court of Claims is the court of proper jurisdiction and the counts against the Department of Law Enforcement and the State troopers were properly dismissed by the circuit court." *Oppe*, 171 Ill. App. 3d at 493-94, 525 N.E.2d at 1191.

Plaintiffs contend the legislature, by reenacting the statute referred to in *Kaiser v. Emrich* (1980), 84 Ill. App. 3d 775, 406 N.E.2d 207 (Ill. Rev. Stat. 1977, ch. 127, par. 35.9(m)(3) (now Ill. Rev. Stat. 1989, ch. 127, par. 63b4(k))), has adopted the interpretation placed on the statute by *Kaiser*. (See *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.) However, this court's disagreement with plain-

tiffs' position is with plaintiffs' analysis of what *Kaiser* and *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035, actually decide. The presence of insurance need not be considered in this case. *Kaiser* and *Bartholomew* decide that when a police officer is driving a police vehicle under circumstances similar to those encountered by ordinary citizens driving their vehicles, the alleged negligence of the officer may support a cause of action filed in the circuit court. We do not agree with plaintiffs' suggestion that there are two categories of cases against State employees, to wit: (1) automobile cases, all of which may be entertained in the circuit court, and (2) other cases involving tort actions to which the standards announced in *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 498 N.E.2d 267, apply. The position adopted by this court is supported by the fact that in *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240, the Illinois Supreme Court adopted and applied the legal principles applied in *Robb* and cited this court's recent decision in *Oppe* without disapproving of it.

In the case at bar, the allegations that defendant acted beyond his scope of authority through wrongful acts have been found by the trial court to be refuted by the motion to dismiss. Plaintiffs allege defendant violated statutes relating to the use of oscillating lights and sirens in emergency situations. (See Ill. Rev. Stat. 1989, ch. 95½, pars. 11—205, 12—215, 12—216.) However, the policy of the Illinois State Police promulgated pursuant to the statute directs that discretion in using these signals may be exercised in some situations. Therefore, we must conclude that it is the policy of the State which plaintiffs are actually challenging in this case. Even assuming plaintiff correctly alleges defendant's acts violate the statute and regulations pertaining to the use of oscillating lights and sirens, defendant can act negligently or wilfully and wantonly without exceeding the scope of his authority. By analogy, we note that while proof of the violation of a statute relating to the operation of a motor vehicle on the highways of the State may be considered *prima facie* evidence of negligence (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323), it would be illogical to decide such a violation is *prima facie* evidence the operator was acting outside the scope of his employment. To hold otherwise would drastically alter the application of the legal theory of *respondeat superior* as it pertains to automobile collision cases. When defendant has acted in such way as to take himself outside the scope of his authority, as defined by the duties of his employment, then the circuit court would retain jurisdiction. This court need not now decide whether defendant's acts were negligent,

wilful and wanton, or the proximate cause of decedent's death. However, it is clear that defendant was acting within the scope of his authority and not for some other purpose unrelated to his employment. The actions complained of are within defendant's normal and official functions as an agent of the State. And, while defendant ordinarily would owe a duty to the general public not to drive negligently, the specific acts of negligence and wilful and wanton misconduct alleged revolve around the operation of a State Police vehicle in a manner uniquely related to his State employment and for which there are equally recognized exceptions to the normal rules of the road (which set out the recognized duties owed by a driver to the general public). *Oppe* similarly concluded that such an action is only nominally against the individual employee and must be brought in the Court of Claims. The same conclusion is warranted here.

■■ Plaintiffs also argue this complaint should not be dismissed because they would be without a remedy for the wrongful death of their son. Plaintiffs fail to explain how an adverse decision in this appeal will impact their case in Federal court. Moreover, plaintiffs recognize the Illinois Supreme Court has previously held that filing an action in the circuit court satisfied any statutory requirement of notice and filing in the Court of Claims. (*Williams v. Medical Center Comm'n* (1975), 60 Ill. 2d 389, 328 N.E.2d 1; *Roth v. Northern Assurance Co. Ltd.* (1964), 32 Ill. 2d 40, 203 N.E.2d 415.) However, plaintiffs ask this court to consider the impact of the Court of Claims decision of *Gunderson v. Illinois* (1980), 33 Ill. Ct. Cl. 297. Although *Gunderson* may seem to preclude plaintiffs from proceeding in the Court of Claims, that fact does not alter the subject-matter jurisdiction, or lack thereof, in the circuit court.

With regard to public-official immunity, such immunity might shield defendant from any claim by plaintiffs for damages. (See *Fulk v. Roberts* (1987), 164 Ill. App. 3d 194, 517 N.E.2d 1098.) In *Oppe*, this court had this to say about public-official immunity:

"As to the sheriff and his deputy, the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*) needs to be considered. Section 2—202 of that act specifically states, 'A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.' (Ill. Rev. Stat. 1987, ch. 85, par. 2—202.) This wilful and wanton requirement applies where police officers are involved in high-speed chase situations. (See *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.)

However, section 9—103(c) of the Act provided:

'Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the *non-liability of the insured public entity* for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act.' (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 85, par. 9—103(c).)

Although this statute has since been amended (Pub. Act 84—1431, art. 1, §2, eff. Nov. 25, 1986), at the time of the collision and at the time of the filing of the complaint, the law provided that, if the municipality secured insurance coverage against a particular liability, then the statutory immunity would be waived. (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.) Plaintiffs pleaded the existence of insurance, but wrongly rely on this argument in this case.

The statute does not affect the common law doctrine of public official immunity relied on here by defendants. The Act was created as a response to the decision in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955, which abolished the common law principle of governmental immunity. So the Act reinstated governmental or sovereign immunity to some extent.

*** The doctrine of public official immunity rests on the theory that government officials should not be impeded from acting in ways they perceive are in the public's best interest because of fears of personal liability. Even after *Molitor*, the courts have recognized the doctrine of public officials immunity. (*Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E.2d 24.) So while the County of Livingston can be sued for the wilful and wanton acts of its employees under section 2—202, the individual employees cannot be held individually liable to the extent their conduct is protected by the immunity.

The policy annunciated by the courts has been to protect the public official where his or her conduct is a good-faith exercise of discretionary, rather than ministerial, duties. (*Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 448 N.E.2d 249.) However, this standard has been stretched and pulled to fit individual cases to the point that the immunity applies to the exercise

of any governmental function, rather than a discretionary, non-governmental function such as a maintenance person deciding where to drive a nail. (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131.) And so the question to be asked is whether the activity of defendants was a uniquely governmental function.

In the case at bar, law enforcement officers attempting to apprehend an escaped criminal is a uniquely governmental function. Therefore, the public official immunity applies and the individual law enforcement officers cannot be personally liable to plaintiffs.

Plaintiffs argue that the granting of absolute immunity violates section 12 of article I of the Illinois Constitution of 1970, which states:

'Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly.' (Ill. Const. 1970, art. I, §12.)

Plaintiffs' remedy is against the State in the Court of Claims, and the municipality in the circuit court subject to the Local Governmental and Governmental Employees Tort Immunity Act. Plaintiffs can have but one recovery for damages anyway. The concept discussed herein merely restricts the pockets from which plaintiffs can seek recovery to those most suitable and the circumstances under which recovery is appropriate in light of the public policy of the State of Illinois.

Plaintiffs also argue the existence of insurance on behalf of State policemen should remove any immunity they have. (See Ill. Rev. Stat. 1987, ch. 121, par. 307.17a.) This argument of plaintiffs fails to recognize the distinction between the governmental or sovereign immunity and the public officials immunity already discussed. The argument also has already been considered and addressed in *Mora v. State of Illinois* (1977), 68 Ill. 2d 223, 369 N.E.2d 868, wherein it was pointed out that there is no statute which says the existence of liability insurance in any way defeats a claim to public officials immunity." *Oppe*, 171 Ill. App. 3d at 494-96, 525 N.E.2d at 1192-93.

██ Plaintiffs, in their reply brief, attempt to rely on a recent decision of the Third District Appellate Court, *Currie v. Lao* (1990), 198 Ill. App. 3d 625, 556 N.E.2d 318. The defendant in that case, also a State trooper, gratuitously responded to a nonemergency call in the

City of Joliet. As he proceeded to the location, he missed a turn and drove the wrong way on a one-way street. In attempting to distinguish *Oppe*, the majority in *Currie* relies on the fact that, in *Oppe*, it was the felon's car, not the officer's car, that was involved in the collision. Justice Heiple's specially concurring opinion seems to point out that in the ordinary operation of a motor vehicle, the negligent operation of that vehicle is not considered a unique governmental function which is afforded protection under the doctrine of public-official immunity. On the other hand, the enforcement of the criminal and traffic laws of this State by attempting to apprehend an offender by means of a high-speed chase is a uniquely governmental function. No one but an officer of the law has the legal authority to so proceed. The key to the case at bar is whether defendant was (or was not) properly following the directive concerning use of flashing lights during a pursuit. If the directive gives defendant the discretion to determine whether to use the flashing lights, then what plaintiffs really want to accomplish is to change the policy of the Illinois State Police regarding use of flashing lights in pursuit. If, as plaintiffs suggest, defendant had no discretion and was required by law to activate his oscillating lights and siren, the public-official immunity could not be invoked on his behalf.

However, having already decided that this case belongs in the Court of Claims, the issue of whether public-official immunity applies to defendant is left to the Court of Claims to decide, *i.e.*, the forum with subject-matter jurisdiction and where the facts may be developed from which the issue may be decided. Defendant's motion to vacate the default judgment states defendant exercised his discretion to not use the oscillating lights and siren because (1) the distance separating decedent's motorcycle and defendant's vehicle and the speed at which the motorcycle was traveling would have rendered such use ineffective with regard to plaintiffs' decedent, and (2) the use of oscillating lights and the siren would have caused a danger and hazard to other traffic lawfully proceeding on the highway. However, the affidavit of defendant in support of this motion does not set forth the facts relied on by defendant in deciding not to use the oscillating lights and the siren.

For the foregoing reasons, the order of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.