JOAN HICKEY, Indiv. and as Special Adm'r for the Estate of Richard J. Hickey, Deceased, Plaintiff-Appellant, v. ROBERT HUBER, Defendant-Appellee.

First District (1st Division)   No. 1—92—2330

Opinion filed May 16, 1994.

Wildman, Harrold, Allen & Dixon, of Chicago (Leonard S. Kurfirst and Donald D. Hindman, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and Mark E. Wilson, Assistant Attorney General, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Joan Hickey, individually and as special administrator for the estate of Richard J. Hickey, brought suit in the circuit court of Cook County against defendant, Robert Huber, an Illinois State trooper. Plaintiff sought recovery for the death of her husband Richard as a result of a 1986 vehicle collision with Huber. The circuit court dismissed the suit for lack of subject matter jurisdiction. We affirm.

On September 18, 1986, Huber, responsible for the northern Illinois area, was assigned to patrol U.S. Interstate 290 and to control traffic on that highway. Huber's field training officer, Tony Morrison, accompanied Huber on this assignment. Both Morrison and Huber stated that they received two radio reports over the Illinois State Police Emergency Radio Network which announced that suspects from an armed robbery had been observed heading east on Cermak Road. The report instructed units to "look out" for a metallic green car without license plates. At the time of the broadcast, Huber and Morrison were travelling south on Harlem Avenue toward Interstate 290. Huber drove to Cermak Road, and as he waited to turn left onto Cermak, both he and Morrison saw a car fitting the description drive through the intersection. Huber turned onto Cermak Road with siren, mars lights, and flashing "wig-wag" lights activated and began chasing the car. However, the green car, attempting to elude the squad car, increased its speed.

The green car proceeded through the intersection of Cermak Road and Home Avenue. The light for the Cermak Road traffic was green. As Huber began to enter the intersection, Hickey, travelling on Home Avenue and apparently oblivious to the siren, entered the intersection against the light. Huber attempted to brake, but could not avoid hitting Hickey's car.

In her complaint, plaintiff specifically alleged that Huber acted in violation of State law by unlawfully operating his vehicle too fast for conditions in excess of the posted speed limit. Claiming sovereign immunity, Huber moved for summary judgment. In response to Huber's motion, plaintiff relied upon the depositions of both Huber and Morrison as well as the unsworn statements of two witnesses to the collision, Alice Ramirez and Rosalinda Gonzalez. In these statements, the witnesses contradicted the troopers' accounts that the light for the Cermak Road traffic was green at the time Huber entered the intersection. Both women also stated that they did not see a green

car go through the intersection. The circuit court granted Huber's motion, finding that the doctrine of sovereign immunity precluded plaintiff's suit from being filed in the circuit court.

Plaintiff subsequently filed a motion to reconsider which contained "new evidence" and which alleged that the court misapplied the law. The alleged new evidence consisted of the affidavits of Ramirez, Gonzalez, and James Hohbein. Huber opposed the motion, arguing that no new evidence existed because plaintiff could have presented the affidavits long before the entry of summary judgment. The circuit court did not allow the filings and denied the motion for reconsideration, noting again that the proper forum for the suit was the Court of Claims.

Plaintiff contends that the doctrine of sovereign immunity does not bar her from pursuing her claim against Huber in the circuit court. She argues that Huber was not performing his official duties as a State trooper at the time of the collision and that the circuit court was the proper forum for the litigation.

Article XIII, section 4, of the Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, § 4.) The legislature has enacted the State Lawsuit Immunity Act, which provides in pertinent part:

"Except as provided in *** 'AN ACT to create the Court of Claims ***' the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1987, ch. 127, par. 801.)

The Court of Claims Act established the Court of Claims and vested in it the exclusive jurisdiction to hear certain matters, including all claims against the State for damages sounding in tort, "if a like cause of action would lie against a private person or corporation in a civil suit." (Ill. Rev. Stat. 1987, ch. 37, par. 439.8(d).) Accordingly, the issue before this court is whether plaintiff's claim against Huber, an employee of the State of Illinois, is actually a claim against the State such that the Court of Claims has exclusive jurisdiction over the action.

■ Whether a suit is, in fact, a suit against the State depends not on the naming of the State as a party in the complaint but on what issues are alleged and what relief is sought. (*Currie v. Lao* (1992), 148 Ill. 2d 151, 592 N.E.2d 977.) Therefore, an action against the State lies even if one of its employees is sued individually so long as judgment "could operate to control the actions of" or "subject" the State to liability. (*Currie*, 148 Ill. 2d at 158.) Sovereign immunity provides no automatic protection from personal liability merely because the employee acted within the scope of his employment for the State.

Courts must look to the "source of the duty" the employee is charged with breaching. (*Currie*, 148 Ill. 2d at 159.) If the duty is imposed solely because of his State employment, sovereign immunity will bar the action. (*Currie*, 148 Ill. 2d at 159.) If the duty is independent of the State employment, sovereign immunity will not attach, and a negligence claim may lie. (*Currie*, 148 Ill. 2d at 159.) Our supreme court has recognized that such an analysis best reflects the spirit of the doctrine which, the court stressed, is not a "blanket" grant of immunity for all State employees. *Currie*, 148 Ill. 2d at 159.

■ In keeping with these concerns, Illinois courts generally have held that claims based on the negligent operation of an automobile by a State employee fall outside the doctrine of sovereign immunity. (*Currie*, 148 Ill. 2d at 160; *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 462, 475 N.E.2d 1035; *Gocheff v. State Community College* (1979), 69 Ill. App. 3d 178, 184, 386 N.E.2d 1141.) The rationale behind such a rule is that negligence which arises from the ordinary operation of a motor vehicle is based on the breach of the duties every driver owes to every other driver. However, in some circumstances, a State employee's manner of operating a vehicle may be so unique to his employment that a lawsuit aimed at his negligent driving could operate to control the actions and policies of the State. *Currie*, 148 Ill. 2d at 160; *Campbell v. White* (1991), 207 Ill. App. 3d 541, 566 N.E.2d 47, *appeal denied* (1991), 139 Ill. 2d 594, 575 N.E.2d 912.

■ Relying on *Currie*, plaintiff contends that sovereign immunity is inapplicable to her claim because she is charging Huber with a breach of duty independent of his State employment. Huber argues that his duty was not like the duty every driver owes to other drivers because only law enforcement vehicles have the legal right to pursue suspects. We agree.

In *Currie*, the supreme court declined to apply sovereign immunity to State Trooper Jose Lao, who was sued after his squad car had collided with a citizen's vehicle while he was responding to a "disturbance" call in Joliet. However, the present case is distinguishable from *Currie* in several aspects. The primary difference is that Trooper Lao was responding to a call of an "intoxicated person" who was allegedly creating a disturbance within the City of Joliet. No reason was given as to why the Joliet police could not handle the call. In contrast, Huber was responding to a radio report concerning a fleeing felon in a vehicle. A suspect eluding arrest in a speeding vehicle will doubtless cross city or town limits, and, in these instances, State troopers augment the efforts of local police. The mobility of a drunken pedestrian, on the other hand, is considerably more limited. Local police need no such supplemental aid.

Moreover, in *Currie*, Lao drove to the alleged scene of the disturbance at a close to normal speed, taking approximately 15 minutes to respond to the "emergency." The supreme court reasoned that any emergency would have become a "non-emergency" during that time span. (*Currie*, 148 Ill. 2d at 162.) Here, Huber and Morrison were in the immediate vicinity of the area where the suspects' car was spotted. Indeed, both men saw the car. Unlike Trooper Lao, Huber's and Morrison's deposition testimony was clear as to their actions at the time of the occurrence. Huber had activated the squad car's flashing lights and siren at the outset of the pursuit, and these were working at the time of the collision. Trooper Lao did not. Interestingly, in *Currie*, no evidence was presented which would tend to corroborate Trooper Lao's version of the story. Here, Morrison's testimony concerning the accident and the events leading up to it matched that of Huber. Radio report records indicate that a call concerning a green car was broadcast to all units. Based on this record, the actions taken by Huber support the finding that his activity at the time of the collision amounted to more than the routine operation of a motor vehicle on a public street.

Although plaintiff accurately points out that Huber surpassed the speed limit, the General Assembly has authorized police officers to disregard certain provisions of the law while in the pursuit of an actual or suspected violator of the law. (Ill. Rev. Stat. 1987, ch. 95$\frac{1}{2}$, par. 11—205.) Officers may so act as long as they exercise due regard for the safety of others. (Ill. Rev. Stat. 1987, ch. 95$\frac{1}{2}$, par. 11—205.) At the time of the collision, the Illinois State Police's policy on "Emergency and Pursuit Driving" stated that "Department officers will [m]ake every reasonable effort to apprehend a fleeing violator." Accordingly, Huber was performing one of his official functions as a State trooper by pursuing the robbery suspects. This duty was performed according to the State's requirements. In contrast, the ordinary operation of a motor vehicle requires no similar functions and gives rise to no similar duties. Thus, if this lawsuit is allowed to proceed against Huber, it could operate to control the policies and procedures of the State Police relating to the pursuit of fleeing suspects. (See *Campbell*, 207 Ill. App. 3d at 544-45.) Huber's manner of operating his vehicle at the time of the collision was so uniquely related to his employment as a State trooper that he should be immunized for his negligence in carrying it out.

Plaintiff contends, in the alternative, that the circuit court erred in preventing a jury from determining whether the doctrine of sovereign immunity applied in this case. In other words, plaintiff suggests that material questions of fact exist which preclude the

entry of summary judgment. She points out that the affidavits of the three witnesses suggest that the green car may not have been present on Cermak Road as sworn to by both Huber and Morrison. Moreover, she claims that Morrison and Huber were equivocal as to whether they were in pursuit of the green car. If that is so, she contends, then the doctrine may not be applied.

Summary judgment is to be granted only where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31, 476 N.E.2d 413.) If the facts of the case allow for more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment must be denied. *West v. Deere & Co.* (1990), 201 Ill. App. 3d 891, 559 N.E.2d 511, *aff'd* (1991), 145 Ill. 2d 177, 582 N.E.2d 685.

Plaintiff contends that she has raised some questions which make it impossible to determine whether sovereign immunity applies here. The primary question she maintains she has raised is the presence of the green car. However, the affidavits upon which she relies do not refute the car's existence. Each affiant merely avers that he or she did not notice a green car. Such contentions do not raise a question of material fact. As for plaintiff's contentions concerning the troopers' statements, the record does not support her argument. Huber's and Morrison's testimony clearly established that they were pursuing the green car. For these reasons, no jury determination on this issue is warranted.

The judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY and MANNING, JJ., concur.