MICHELLE C. POSTICH, Plaintiff-Appellee and Cross-Appellant, v. TIMOTHY M. HENRICHS, Defendant-Appellant and Cross-Appellee.

Second District No. 2—93—0626

Opinion filed October 18, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellant.

James J. DeSanto and Terry L. Weppler, both of James J. DeSanto, P.C., of Libertyville, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Plaintiff, Michelle C. Postich, brought this action in the circuit court of Lake County against defendant, Timothy M. Henrichs,

seeking recovery for injuries allegedly sustained in an automobile accident. At the time of the accident, defendant was employed by the Department of Conservation as a police officer and was on duty in that capacity. Following a bench trial, the court entered judgment in plaintiff's favor awarding damages in the amount of $4,682. On appeal, defendant argues that this action should have been brought in the Court of Claims and the circuit court of Lake County lacked subject-matter jurisdiction. Defendant alternatively argues that plaintiff failed to prove that his alleged negligence was the proximate cause of any injury to plaintiff. Plaintiff cross-appeals from orders of the trial court deferring the accrual of interest on the judgment and staying the enforcement of the judgment without an appeal bond. We agree that the Court of Claims, and not the circuit court, had jurisdiction; and we vacate.

On December 6, 1991, at about 2:48 p.m., the Village of Glencoe Department of Public Safety received a report of possible shots fired at the Skokie Lagoons, which was described by one witness as a series of lagoons and forested areas bounded by residential areas and the Edens Expressway. A dispatcher directed Glencoe police officers to respond to the scene and then immediately advised the Department of Conservation of the report by telephone. The Glencoe dispatcher testified that the telephone call to the Department of Conservation was "informational" and was not a request for assistance.

At about 3:20 p.m., defendant received a radio call from his commanding officer's secretary indicating that the Glencoe police requested assistance "ASAP" with a report of a "man with a gun" at the Skokie Lagoons. Defendant was driving his patrol car on Sheridan Road north of the Village of Lake Bluff when he received the call. He then proceeded westbound on Rockland Road. Defendant testified that he activated his vehicle's various emergency lights and its siren. As defendant approached the intersection of Rockland Road and Green Bay Road, the westbound lanes were blocked by vehicles stopped at a red light. Defendant drove around those vehicles into the eastbound lane of traffic. Defendant testified that he inched into the intersection and was struck by plaintiff's vehicle, which was southbound on Green Bay Road.

Two eyewitnesses who observed the accident offered somewhat conflicting accounts of defendant's actions as he approached the intersection. One witness testified that defendant came to a rolling stop at the intersection and looked both ways before proceeding into the intersection, at which point the collision occurred. However, a second witness testified that defendant momentarily activated his brakes about 20 feet from the intersection and then accelerated into

the intersection, achieving a speed of about 40 miles per hour. The trial court's comments indicate that the court credited the second witness' account.

Both eyewitnesses testified that the emergency lights on defendant's vehicle were operating. One of the witnesses also testified that he heard the siren on defendant's vehicle. The other witness, a motorist, did not hear the siren, but he explained that the windows of his car were rolled up, his car radio was on, and his children were making noise in the backseat.

Defendant testified that he considered the report of a person with a gun at the Skokie Lagoons to be an emergency which constituted a potentially life-threatening situation. Defendant indicated that on occasion deer killed with .22-caliber ammunition had been found at the Skokie Lagoons. Such ammunition has a range of 1.7 miles and could strike people in adjacent portions of Glencoe or drivers on the Edens Expressway. Defendant considered the report of a person with a gun at the Skokie Lagoons was very serious because of the proximity to residential areas. Defendant's commanding officer, Captain James Getz, testified that the report of a person with a gun could be considered an emergency and that it was consistent with the policies of the Department of Conservation law enforcement division and with police training to respond to such a report with emergency lights and siren activated.

The trial court rejected defendant's argument that the Court of Claims was the proper forum for the plaintiff's action and entered judgment in favor of plaintiff in the amount of $4,682 on March 16, 1993. The trial court had found plaintiff's damages to be $5,508, but found that plaintiff was 15% at fault and reduced her damages accordingly. Thereafter, defendant filed a timely post-trial motion. On May 6, 1993, the trial court denied defendant's motion, but ordered that interest on the judgment would not begin to accrue until 30 days after the May 6 order. Subsequently, the trial court entered an order staying the enforcement of the judgment without an appeal bond.

We first consider defendant's argument that although this action was nominally brought against him as a private individual, it is, in effect, a suit against the State. As such, defendant argues, plaintiff should have brought this action in the Court of Claims in accordance with statutory sovereign immunity principles. Defendant maintains that the circuit court of Lake County lacked subject-matter jurisdiction over the matter.

Article XIII, section 4, of the Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly

may provide by law." (Ill. Const. 1970, art. XIII, § 4; see *Currie v. Lao* (1992), 148 Ill. 2d 151, 157-58.) Pursuant to this provision, the General Assembly has enacted the State Lawsuit Immunity Act (745 ILCS 5/1 (West 1992)), which provides, in pertinent part, that the State of Illinois shall not be made a defendant or party in any court except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 1992)). In turn, the Court of Claims Act created the Court of Claims (705 ILCS 505/1 (West 1992)), which has exclusive jurisdiction to hear and determine, *inter alia*, "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit" (705 ILCS 505/ 8(d) (West 1992)).

The determination of whether an action is in fact against the State depends upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. (*Currie v. Lao* (1992), 148 Ill. 2d 151, 158; *Hickey v. Huber* (1994), 263 Ill. App. 3d 560, 562, 635 N.E.2d 791, 793.) "An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie*, 148 Ill. 2d at 158.

In *Currie v. Lao* (1992), 148 Ill. 2d 151, 158, the court explained that sovereign immunity does not immunize a State employee for his own acts of negligence merely because he acted within the scope of his employment. (See also *Hickey*, 263 Ill. App. 3d at 562, 635 N.E.2d at 793.) Instead, the applicability of sovereign immunity turns upon the source of the duty the employee is alleged to have breached. Where the basis of the negligence claim is the breach of a duty imposed on the State employee *solely* by virtue of his or her State employment, sovereign immunity will bar maintenance of the action in the circuit court. But if the duty is imposed upon the employee *independently* of State employment, sovereign immunity will not apply, and a negligence action may be prosecuted in the circuit court even though the allegedly negligent acts were within the scope of employment. *Currie*, 148 Ill. 2d at 158-59.

In *Currie*, our supreme court considered the applicability of sovereign immunity principles to a negligence claim against an Illinois State trooper arising from an automobile accident. The trooper was driving the wrong way on a one-way street and collided with another vehicle at an intersection. The *Currie* court observed that sovereign immunity is generally inapplicable to claims based on negligence arising from the *ordinary* operation of an automobile by a State employee. (148 Ill. 2d at 160; see, *e.g.*, *American Family Insur-*

*ance Co. v. Seeber* (1991), 215 Ill. App. 3d 314.) Such negligence claims are based on the breach of the duty every driver owes to every other driver. That duty is not imposed solely by virtue of the State employment. (*Currie*, 148 Ill. 2d at 160; see also *Hickey*, 263 Ill. App. 3d at 563, 635 N.E.2d at 793; *Seeber*, 215 Ill. App. 3d at 318.) This general rule is premised on the duty owed in the ordinary operation of an automobile. However, the *Currie* court acknowledged that "in some circumstances, a State employee's manner of operating a vehicle may be so unique to his employment that a lawsuit aimed at his negligent driving could operate to control the actions and policies of the State." *Currie*, 148 Ill. 2d at 160, citing *Campbell v. White* (1991), 207 Ill. App. 3d 541 (sovereign immunity applied where State law enforcement officer negligently caused the death of a suspect during a high-speed chase of the suspect); see also *Hickey v. Huber* (1994), 263 Ill. App. 3d 560, 635 N.E.2d 791 (sovereign immunity applied to wrongful death suit where decedent was killed in automobile collision with State trooper who was pursuing a bank robbery suspect).

In *Currie* the defendant State trooper contended that he was responding to a call for assistance by the Joliet police department with a report of a possibly intoxicated person causing a disturbance in the City of Joliet. However, based on the evidence, the court rejected the trooper's account of the accident. The court concluded that the trooper was not operating his vehicle in a manner unique to his employment, but was merely engaged in the routine operation of his vehicle at the time of the accident, and sovereign immunity did not apply. (*Currie*, 148 Ill. 2d at 164.) The *Currie* court was careful to distinguish *Campbell v. White* (1991), 207 Ill. App. 3d 541, where a State law enforcement officer engaged in a high-speed chase struck the vehicle of the suspect he was chasing causing the suspect's death. The *Currie* court noted that "although the officer in *Campbell* was operating a motor vehicle, he was doing so in a manner in which *only* a governmental official is authorized to act." (Emphasis in original.) *Currie*, 148 Ill. 2d at 163.

In the case at bar, defendant argues that when the collision with plaintiff occurred, defendant was operating his vehicle in a manner unique to his State employment as a police officer. Defendant contends that *Currie* is factually distinguishable and that the case at bar more closely resembles *Campbell*. We agree.

A police officer responding to an emergency may exercise certain privileges under section 11—205 of the Illinois Vehicle Code (625 ILCS 5/11—205 (West 1992)) which do not apply to private citizens engaged in the routine operation of motor vehicles, and thus the manner of operation of a motor vehicle in such situations is uniquely

related to the officer's employment. However, in announcing its ruling that sovereign immunity did not apply, the trial court stated that "the facts of this particular case when viewed as a whole would not create such an emergency as would obviate Officer Henrichs' duties to operate his automobile as an ordinary motorist with due regard for a motorist [sic] duties to other drivers of motor vehicles on the roadway." We believe the trial court erred by focusing on whether defendant's evaluation of the situation as an emergency was objectively reasonable.

It is undisputed that defendant actually perceived that an emergency existed; in proceeding to the scene with his vehicle's emergency lights and siren activated, defendant was acting in furtherance of his duties as a police officer. Even if defendant's assessment of the need for an emergency response could be characterized as unreasonable, and therefore negligent, defendant nonetheless acted within the scope of his authority in treating the situation as an emergency. (See *Campbell v. White* (1991), 207 Ill. App. 3d 541, 551 ("defendant can act negligently or wilfully and wantonly without exceeding the scope of his authority"); *cf. Janes v. Albergo* (1993), 254 Ill. App. 3d 951, 959 ("an employee acting in furtherance of the employer's purposes can engage in wilful and wanton conduct, which is a form of negligence, without exceeding the scope of authority").) Since negligence in assessing the need for an emergency response would not vitiate defendant's authority to proceed in accordance with the assessment of an emergency, we can see no reason why sovereign immunity principles should apply differently here than in any other case where a police officer is charged with driving negligently while responding to an emergency.

In any event, having reviewed the evidence, we disagree with the trial court's determination that defendant acted unreasonably in treating the Skokie Lagoons call as an emergency. Both plaintiff and his commanding officer, Captain Getz, testified that the report of a person with a gun at the Skokie Lagoons justified an emergency response. In addition to the inherent dangers in such a situation, defendant was aware of facts suggesting that hunting with .22-caliber ammunition sometimes takes place at the Skokie Lagoons. Defendant explained that this ammunition has a range of about 1.7 miles and could strike persons in nearby residential areas or drivers on the Edens Expressway. We find no valid basis for concluding that an emergency response was unreasonable under these circumstances.

In rejecting the assertion of sovereign immunity, the trial court specifically mentioned two factors which our supreme court had discussed in *Currie*. First, the trial court noted that, at most, defen-

dant was responding to a call for assistance or backup from the Glencoe police department. Second, the trial court noted that the accident occurred a "significant distance" from the Skokie Lagoons. We are not persuaded by this reasoning.

In *Currie,* the court questioned the truthfulness of the defendant State trooper's testimony that he had received a call for assistance from the Joliet police department. The Joliet police department had no record of such a request for assistance. The court further observed, in passing, that even if the trooper was actually proceeding to a call for assistance, it was not part of the trooper's "normal and official functions as a State trooper" to respond to the call. (*Currie,* 148 Ill. 2d at 162.) The court noted that the trooper's official duty was the regulation of traffic on Interstate 80; disturbances within the City of Joliet were the primary responsibility of the Joliet police department. *Currie,* 148 Ill. 2d at 162.

The *Currie* court's remarks must be viewed in context. In *Currie,* the purported call for assistance involved a minor disturbance by a possibly intoxicated individual, a matter well within the experience of local police. (See *Hickey v. Huber* (1994), 263 Ill. App. 3d 560, 563, 635 N.E.2d 791, 793-94.) In contrast, in the case at bar the record establishes that it is not uncommon for local police departments to request the assistance of Department of Conservation police in matters involving conservation areas. Captain Getz testified that Department of Conservation police officers receive special training in law enforcement in a conservation setting. Defendant testified that Department of Conservation police have expertise in dealing with armed individuals in wooded areas. Thus, unlike *Currie,* where a routine disturbance involving an intoxicated individual did not require assistance by a State trooper, the record in the case at bar demonstrates that defendant may have been better equipped than local police to respond to an incident involving a person with a gun at the Skokie Lagoons, and his assistance was appropriate in this situation.

We also find the trial court's reliance on the distance (of which the trial court took judicial notice) between the accident site and the Skokie Lagoons to be misguided. In *Currie,* our supreme court concluded that sovereign immunity was inapplicable because the defendant State trooper was operating his vehicle in a routine manner at the time of the accident. In *Currie,* the State trooper's credibility was in question, and indeed the Joliet police department had no record of the call for assistance to which the State trooper claimed he was responding. In rejecting the State trooper's account of the accident, the court stated that the trooper's contention that he was proceeding to the scene of an emergency was negated by his actions

as he traveled to the scene. (*Currie*, 148 Ill. 2d at 162.) Among other things, the court noted that at the time of the accident the trooper had been driving at close to the speed limit for approximately 15 minutes when the collision occurred. The court observed that "[a]ny 'emergency' that allegedly had existed would most certainly have become a non-emergency after such time had elapsed." (*Currie*, 148 Ill. 2d at 162.) This observation was germane to the evaluation of the defendant's credibility. We do not discern a categorical holding as to the duration of emergencies.

Moreover, the *Currie* court's observation must again be considered in context. The purported "emergency" in *Currie* was a possibly intoxicated person causing a disturbance, a situation which presumably could be expeditiously brought under control by local police. In contrast, here defendant faced a potentially more serious situation that might not be resolved so quickly. Defendant's commanding officer, Captain Getz, testified that a report of a "person with a gun" only ceases to be an emergency when further information is received indicating that no emergency exists or that the emergency has been resolved.

Plaintiff insists that defendant did not act prudently in responding to the Skokie Lagoons call as an emergency because defendant did not seek additional information about the situation and did not inquire whether other officers were closer to the scene. Again, we question plaintiff's apparent premise that the applicability of sovereign immunity depends on whether the decision to treat the Skokie Lagoons call as an emergency was objectively reasonable. In any event, there is simply no evidence in the record that proper police procedure called for defendant to seek further information before responding with lights and siren activated. The uncontradicted evidence established that defendant's response was proper.

■ Plaintiff also argues that her action against defendant individually is authorized by section 11—205(e) of the Illinois Vehicle Code (625 ILCS 5/11—205(e) (West 1992)). While section 11—205 authorizes drivers of emergency vehicles to disregard certain traffic laws when responding to an emergency, subsection (e) states:

> "*The foregoing provisions* do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." (Emphasis added.) (625 ILCS 5/11—205(e) (West 1992).)

Plaintiff argues that pursuant to this provision defendant may be held liable for his reckless disregard of her safety and the safety of

others. However, section 11—205(e) is irrelevant to the question of immediate concern: whether statutory principles of sovereign immunity barred this action from proceeding in the circuit court. Section 11—205(e) merely provides that the privileges afforded under section 11—205 to drivers of authorized emergency vehicles (who may or may not be State employees) do not themselves immunize such drivers from liability for reckless disregard for the public safety. Section 11—205(e), while it affects the issue of comparative conduct in suits *by* the drivers of emergency vehicles, does not purport to limit the applicability of statutory sovereign immunity principles.

To summarize, the evidence establishes that the negligence for which recovery is sought consists of the alleged breach of a duty imposed on defendant solely by virtue of his State employment inasmuch as that duty arose from the operation of a motor vehicle in a manner unique to defendant's State employment. Accordingly, the suit was, in effect, against the State, and the trial court's contrary conclusion is against the manifest weight of the evidence. Since plaintiff's action is against the State, the circuit court of Lake County lacked subject-matter jurisdiction, and its judgment must be vacated.

In view of our conclusion that the trial court lacked subject-matter jurisdiction, it is unnecessary to consider defendant's alternative argument that plaintiff failed to prove that defendant's alleged negligence was the proximate cause of her injuries. Similarly, since the judgment against defendant must be vacated, it is unnecessary to consider plaintiff's arguments on cross-appeal that the trial court erred in deferring the accrual of interest on the judgment and staying enforcement of the judgment without requiring an appeal bond.

For the foregoing reasons, the judgment of the circuit court of Lake County is vacated.

Vacated.

McLAREN and DOYLE, JJ., concur.