No. 2--04--1017

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

ANGELITA KAWAGUCHI, ) Appeal from the Circuit Court

) of Du Page County.

Plaintiff-Appellant, )

)

v. ) Nos. 03--L--1348

) 04--L--345

ERIN GAINER, Individually and as an Agent )

and Employee of the Illinois State Toll )

Highway Authority, and THE ILLINOIS )

STATE TOLL HIGHWAY AUTHORITY, ) 

)

Defendants-Appellees ) Honorable

) Stephen J. Culliton,

(Stephon B. Effinger, Defendant). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

On a spring morning in April 2002, State Trooper Erin Gainer raced to respond to a report of a traffic accident at the intersection of Interstate 88 and York Road.  Cars yielded as Trooper Gainer drove onto the interstate.  
Except one.  As Trooper Gainer crossed the interstate, plaintiff, Angelita Kawaguchi, crashed into her and collided with Stephon B. Effinger.  After crashing into Trooper Gainer, plaintiff sued her.  Plaintiff also sued Effinger and the Illinois State Toll Highway Authority (Authority).
(footnote: 1)  The suit was filed in the circuit court of Du Page County,
(footnote: 2) and Trooper Gainer and the Authority moved to dismiss pursuant to section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2002)).  Trooper Gainer argued, among other things, that, under the doctrine of sovereign immunity, plaintiff's suit should have been filed in the Court of Claims and the circuit court therefore lacked jurisdiction to hear the case.  For its part, the Authority argued, among other things, that, because Trooper Gainer was an employee of the State Police and not of the Authority, the Authority was not vicariously liable for her alleged negligence.  The court granted defendants' motions to dismiss and denied plaintiff's motion to reconsider.  Plaintiff appeals, and we affirm.

I. BACKGROUND

A. Facts

The facts of this case are largely undisputed.  On April 6, 2002, Trooper Gainer was conducting a traffic stop on northbound Interstate 294, when she received a radio dispatch of an accident with injuries at the intersection of York Road and Interstate 88.  Because Trooper Gainer's patrol area included this intersection, the dispatch was specifically directed at her.  An applicable State Police policy and procedure manual instructed Trooper Gainer and her fellow officers to treat a report of an accident with injuries as an emergency.

After receiving the emergency dispatch, Trooper Gainer informed the motorist she had pulled over that "it was his lucky day."  She said that she had a more important call, told him to be more careful, and gave him his driver's license back.  Then she prepared to respond to the emergency call.

Trooper Gainer was used to getting calls like this one.  For most of her more than half a decade with the State Police, she was one of the troopers assigned to District 15, which is responsible for policing the tollways.  District 15 exists pursuant to a contract between the Authority and the State Police.  That contract was entered into pursuant to a statute, which provides that the State Police are not required to police the tollways except as required by contract and authorizes the State Police and the Authority to enter into such contracts.  See 20 ILCS 2610/20 (West 2002).  The statute also limits the acceptable terms of such contracts.  For example, such contracts must provide that the Authority is financially responsible for claims of injury or illness made by State Police officers assigned to the tollways.  Additionally, such contracts must provide that the Authority is responsible for the cost of police uniforms and equipment.  20 ILCS 2610/20 (West 2002).  Further, such contracts must provide that the Authority is responsible for the cost of police training and compensation.  20 ILCS 2610/20 (West 2002).  Pursuant to the statute, the Authority and the State Police entered into a contract to police the tollways.

Under that contract, although the officers assigned to District 15 enforce tollway regulations, the State Police has the exclusive authority to direct, control, and supervise the manner in which the officers perform their duties.  
As Trooper Gainer put it, "all supervision and control as to the manner in which I conducted my employment duties was exercised by my superior police officers by means of orders and directives issued in the chain of command of the Department of State Police located at its District #15."  The contract also provides that the State Police has the exclusive authority to choose which officers to assign to the district.  Pursuant to this provision, the State Police assigns to District 15 only those officers who have been trained consistent with the policies and standards of the State Police.

Trooper Gainer is one of those officers.  Shortly after joining the State Police, she attended the police academy, where she was certified as a state trooper. She was then assigned to District 15, where her duties included answering radio calls, making traffic stops, and enforcing traffic laws. Additionally, as a trained first responder, she was required to respond to the scenes of traffic accidents to see if her medical training could be of use.  Once there, she was responsible for determining the number of people and vehicles involved, assessing the extent of the injuries, and deciding whether an ambulance was needed.

On the day of the accident with which we are concerned here, Trooper Gainer planned to do exactly that.  From the place where she had earlier conducted the traffic stop, there were two routes she could take to get to the scene of the accident.  The first route required her to drive through a toll area, then drive an additional mile, then turn around, drive back over the mile she would have just traveled, go back through the toll area again, and then proceed to the accident scene.  The second route allowed her to make use of an "authorized vehicles only" turnaround.  To do so, she needed to proceed south across the westbound lanes of Interstate 88, a course of action authorized by statute.  See 625 ILCS 5/11--205(b), (c)(4) (West 2002) ("
The driver of an authorized emergency vehicle, when responding to an emergency call ***, may"
 "[d]isregard regulations governing direction of movement")
.  Because of the slow down involved in taking the first route, including having to twice pass through the toll area, Trooper Gainer did not consider that route a valid option for an emergency response.

After selecting her route, Trooper Gainer said, she turned on her flashing lights and siren and started toward the scene of the accident.  She headed down an on ramp onto Interstate 88, and then proceeded south across the westbound lanes in the direction of the authorized vehicles turnaround.  At this point, Interstate 88 has three westbound lanes.  When Trooper Gainer entered the interstate, the morning was bright and clear, and conditions were dry.  Traffic in the first two lanes yielded the right-of-way, and Trooper Gainer proceeded toward the turnaround.

She did not make it.  As Trooper Gainer entered the third lane, plaintiff smashed into the driver's-side door of her patrol car.  At about the same time, there was a collision between plaintiff's car and Effinger's car.  According to Effinger, who has also sued Trooper Gainer, Trooper Gainer did not have her flashing lights and siren activated at the time.
(footnote: 3)  Effinger did not say Trooper Gainer was driving something other than a clearly marked police car.

Trooper Gainer was apparently injured in the accident.  As required by both contract and statute, she filed a workers' com
pensation claim with the Authority.  At the time of her deposition, Trooper Gainer remained an employee of the State Police.

B. Procedural History

In February 2003, about a year after she crashed into Trooper Gainer, plaintiff filed suit against her.  In her complaint, plaintiff claimed that crashing into Trooper Gainer caused plaintiff injury.  Plaintiff also claimed that crashing into Trooper Gainer caused the collision between plaintiff and Effinger, whom plaintiff also sued.  Plaintiff further claimed that, although Trooper Gainer was a State Police officer, she was an employee of the Authority or, if not a regular employee, a borrowed one. On this theory, plaintiff sued the Authority too.

Trooper Gainer filed a motion to dismiss, arguing that, although the suit was nominally against her, it was in essence a suit against the State.  Therefore, Trooper Gainer argued, the circuit court lacked jurisdiction over the case pursuant to the doctrine of sovereign immunity; the proper forum, Trooper Gainer argued, was the Court of Claims.  Plaintiff did not respond to Trooper Gainer's motion within the time allotted.  Instead, after that time had expired, plaintiff asked the trial court to allow her more time to respond.  The trial court granted plaintiff's request.

In May 2004, the trial court held a hearing on Trooper Gainer's motion to dismiss.  Because it found that Trooper Gainer's actions in responding to an emergency call were unique to her position as a member of the State Police, the trial court concluded that sovereign immunity applied.  Accordingly, the trial court concluded that it lacked jurisdiction.  During the hearing, plaintiff's attorney pointed out that, in an affidavit filed by Effinger in his suit against Trooper Gainer, Effinger claimed that Trooper Gainer's flashing lights and siren were not activated at the time of the accident.  However, because Effinger's affidavit was not before the trial court, it did not consider the affidavit.

Just under 30 days later, in June 2004, plaintiff filed a motion to reconsider.  In that motion, plaintiff argued that Effinger's affidavit constituted newly discovered evidence that was not earlier available.  Plaintiff further argued that Effinger's affidavit created a genuine issue of material fact as to whether Trooper Gainer was acting in a way unique to her employment as a State Police officer.  That is, according to plaintiff, if Trooper Gainer was driving without her flashing lights and siren on, then her conduct in responding to an emergency call by driving south through Interstate 88's westbound lanes would not be unique to her position.  Plaintiff argued that this was so, notwithstanding that police responding to emergency calls may disobey regulations governing the direction of traffic flow regardless of whether they have their flashing lights and siren on.  See 625 ILCS 5/11--205(d) (West 2002).

In July 2004, the trial court held a hearing on plaintiff's motion to reconsider.  Although the trial court stated that it was "not sure why [Effinger's affidavit] couldn't have been discovered well before the first go around," it granted plaintiff's request that it consider Effinger's affidavit.  Taking the affidavit as true, the trial court found the fact that Trooper Gainer may not have had her flashing lights and siren on did not change the conclusion that she was acting in a way unique to her position when she responded to the emergency call.  Thus, the trial court denied plaintiff's motion to reconsider.

In September 2004, the trial court considered the Authority's motion to dismiss.  By now, plaintiff had conceded that Trooper Gainer was a member of the State Police and not an employee of the Authority.  As plaintiff put it, "[plaintiff] acknowledges that Gainer was employed by the State Police at the time of the incident." Nevertheless, plaintiff claimed that a genuine issue of material fact existed as to whether Trooper Gainer was a borrowed employee of the Authority at the same time.  Specifically, plaintiff argued that this was so because the Authority paid Trooper Gainer's salary and because Trooper Gainer had filed her worker's compensation claim with the Authority.  Additionally, plaintiff stressed that the Authority had provided Trooper Gainer with a uniform, squad car, and radio.  Plaintiff argued that these facts, coupled with District 15 troopers' enforcement of tollway regulations, created a genuine issue of material fact as to whether Trooper Gainer was a borrowed employee of the Authority.

The trial court found that Trooper Gainer was not a borrowed employee of the Authority and granted the motion to dismiss.  At that point, the cases against Trooper Gainer and the Authority had been disposed of, but the case against Effinger was still pending.  So that plaintiff could appeal the decision as to Trooper Gainer and the Authority, the trial court entered an order in which it stated that there was no just reason to delay an appeal.  See 155 Ill. 2d R. 304(a).  This timely appeal followed.

II. ANALYSIS

A. Introduction

Plaintiff argues that the circuit court erred in granting Trooper Gainer's motion to dismiss because a genuine issue of material fact exists as to whether Trooper Gainer was acting in a way unique to her position as a state trooper at the time of the accident
.  Thus, plaintiff questions whether sovereign immunity deprived the trial court of jurisdiction over her claim against Trooper Gainer.  With regard to the Authority, plaintiff argues that the trial court erred in dismissing her claim because a genuine issue of material fact exists as to whether Trooper Gainer was a borrowed employee of the Authority.  For her part, Trooper Gainer argues that, in addition to sovereign immunity, public official immunity bars plaintiff's claim against her.  For its part, the Authority, while conceding that under some circumstances it has waived sovereign immunity, argues that Trooper Gainer was not its employee and that, even if she was, it has not waived sovereign immunity under the circumstances of this case.

Although the parties discuss plaintiff's claim against the Authority last, we do not believe this is the most analytically cohesive way to proceed.  If Trooper Gainer was a borrowed employee of the Authority at the time of the accident, then the State Police could not be liable for any negligence on her part.  27 Am. Jur. 2d 
Employment Relationship
 §377, at 829 (2004) ("
If an employee was a borrowed servant at the time of the allegedly tortious conduct, the employee's general employer can escape liability for such conduct"
)
.  Instead, any vicarious liability would rest on the Authority.  27 Am. Jur. 2d 
Employment Relationship
 §377, at 829 (2004) (
"The employer who temporarily borrows and exercises control over another's employee assumes liability in respondeat superior for the activities of the borrowed employee"
).  Thus, if Trooper Gainer was a borrowed employee of the Authority, the next question would be whether, under the circumstances of this case, the Authority has waived sovereign immunity as to her conduct; only after answering that question could we proceed, if necessary, to a substantive analysis of the sovereign immunity issue.  
On the other hand, there is no suggestion that the State has waived sovereign immunity over the actions of State Police employees.  Thus, if, at the time of the accident, Trooper Gainer was an employee of the State Police, rather than a borrowed employee of the Authority, the question immediately becomes whether, pursuant to sovereign immunity, the circuit court lacked jurisdiction over plaintiff's suit.  Accordingly, we believe the most analytically correct first step to take is to 
determine the identity of Trooper Gainer's employer.  Before getting to that, however, we pause to set out the standard of review.

B. Standard of Review

As noted, the trial court dismissed plaintiff's claims pursuant to section 2--619 of the Code.
(footnote: 4) 
  
Section 2--619 provides litigants with an opportunity to dispose of issues of law or easily proved issues of fact.  
Northern Trust Co. v. County of Lake
, 353 Ill. App. 3d 268, 275 (2004).  In ruling on 
a section 2--619 motion, the trial court may consider pleadings, depositions, and affidavits.  
Estate of Heune v. Edgcomb
, 355 Ill. App. 3d 645, 647-48 (2005)
.  When supporting 
affidavits
 have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts contained in the supporting affidavits are deemed admitted.  
Raintree Homes, Inc. v. Village of Long Grove
, 209 Ill. 2d 248, 262 (2004); see also 
Miller v. Highway Commissioner of North Otter Township Road District
, 344 Ill. App. 3d 1157, 1166 (2003) 
("A court will accept as true those evidentiary facts in a defendant's supporting 
affidavit
 if the plaintiff fails to refute those facts in a counteraffidavit, notwithstanding contrary, unsupported allegations in the plaintiff's complaint")
.  
With this in mind, we review 
de novo
 the dismissal of a claim pursuant to section 2--619.
  See 
Northwest Millwork Co. v. Komperda
, 338 Ill. App. 3d 997, 1000 (2003)
.  The question on appeal is whether there exists a genuine issue of material fact that should have precluded judgment in favor of the moving party.  
Carroll v. Paddock
, 199 Ill. 2d 16, 22 (2002).  

C. Borrowed Employees

Plaintiff argues that, as a state trooper assigned to patrol the tollway, Trooper Gainer was a borrowed employee of the Authority.
(footnote: 5)  Thus, plaintiff argues that the Authority is vicariously liable for Trooper Gainer's alleged negligence.  Moreover, plaintiff argues that the Authority has waived sovereign immunity.  That is, plaintiff argues that, assuming Trooper Gainer was a borrowed employee of the Authority, the circuit court has jurisdiction.  We will discuss sovereign immunity in more detail in Part II D below.  For now, it is sufficient to note that, as indicated above, if sovereign immunity applies, the circuit court does not have jurisdiction.  See 745 ILCS 5/1 (West 2002); 705 ILCS 505/8(d) (West 2002).  In response to plaintiff's claims, the Authority concedes that, in some circumstances, it has waived sovereign immunity as to its employees.  However, the Authority argues that Trooper Gainer was not its employee.  Moreover, the Authority argues that, even if Trooper Gainer was its employee, under the circumstances of this case it has not waived sovereign immunity as to her actions.  Because we find that Trooper Gainer was not a borrowed employee of the Authority, it is unnecessary to discuss the Authority's additional argument.  What is necessary, however, is that we begin our treatment of this issue by exploring some confusion that surrounds this area of law.

1. 
The law of borrowed employees

When it comes to the law of borrowed employees, there are a few pretty basic propositions.  First, 
an employee in the general employment of one employer may be loaned to another for the performance of work and, while performing that work, become the employee of the employer to whom he or she has been loaned.
  
Haight v. Aldridge Electric Co.
, 215 Ill. App. 3d 353, 365 (1991)
.  Second, as noted, an employer who borrows an employee assumes liability in 
respondeat superior
 for the actions of that employee.  27 Am. Jur. 2d 
Employment Relationship
 
§
377 (2004).  Put another way, if an employee was a borrowed employee at the time of some alleged tortious conduct, that employee's general employer is not liable for that conduct.  27 Am. Jur. 2d 
Employment Relationship
 
§
377 (2004).  Third, 
whether a transfer of employment occurs largely depends on whether 
the alleged borrowing employer has the right to control the allegedly borrowed employee
.  
Haight
, 215 Ill. App. 3d at 365.

Beyond these basic propositions, the law in this area is somewhat confused.  See, 
e.g.
, B. Cardozo, 
A Ministry of Justice
, 35 Harv. L. Rev. 113, 121 (1921) (
"The law that defines or seeks to define the distinction between general and [borrowing] employers is beset with distinctions so delicate that chaos is the consequence. No lawyer can say with assurance in any given situation when one employment ends and the other begins"
); J. Hynes, 
Chaos and the Law of Borrowed Servant: An Argument for Consistency
, 14 J.L. & Com. 1 (1994) (stating that "no improvement has been made [in this area of law] since [Justice Cardozo's] time").   For example, some cases have said that there can be no borrowed-employment situation absent a contract, express or implied, between the alleged borrowing employer and the allegedly borrowed employee.  See, 
e.g.
, 
A.J. Johnson Paving Co. v. Industrial Comm'n
, 82 Ill. 2d 341, 350 (1980); 
O'Loughlin v. Servicemaster Co. Ltd. Partnership
, 216 Ill. App. 3d 27, 35-36 (1991).  In other words, these cases require the employee's consent to the arrangement.  However, other cases do not.  See, 
e.g.
, 
Willfong v. Dean Evans Co.
, 287 Ill. App. 3d 1099, 1101-03 (1997)
; 
Casey v. E.J. Cattani & Son Gravel
, 133 Ill. App. 3d 18, 21-23 (1985)
.
 

This confusion has permeated the parties' briefs.  For example, the Authority says there must be a contract.  But the Authority fails entirely to argue that a contract did or did not exist.  Moreover, the Authority does not argue that, if a contract did not exist, there was not a borrowed-employment situation.  If, as the Authority says, a contract is required, then its failure to pursue this line of argument is puzzling.   Meanwhile, like the Authority, plaintiff says there must be a contract.  Specifically, plaintiff states, "whether [a borrowed-employment situation exists] depends on whether the borrowing employer has the right to direct and control the employee with respect to the work performed 
and whether an employment contract, express or implied, existed between the employee and the borrowing employer
."  (Emphasis added.)  Yet, like the Authority, plaintiff does not argue that such a contract--either express or implied--existed here.  Rather, plaintiff focuses on the contract between the alleged borrowing employer and the alleged 
general employer
, that is, the State Police.  In other words, plaintiff sets out a test and then makes no attempt to meet it.

We believe that both plaintiff and the Authority have set out the wrong test.  That is, where, as here, a case involves a third party's claim against an alleged borrowing employer based on an act of the allegedly borrowed employee, rather than a claim by the employee himself or herself, we do not believe that a court must find a contract between the alleged borrowing employer and the allegedly borrowed employee before it can find that a borrowed employment situation existed.  Stated differently, we do not believe that, in the context of third-party claims, the determination of whether a borrowed-employment situation existed turns on whether the employee consented to the arrangement.  We find support for this conclusion along two avenues.

First, when it comes to determining who is a borrowed employee, cases have recognized the distinction between a third-party claim on the one hand and a claim by the worker himself on the other.  For example, in 
O'Loughlin
, the court noted that, in the latter case, the employee's "understandings, rights, [and] liabilities" are of critical importance.  
O'Loughlin
, 216 Ill. App. 3d at 36.  Thus, in the context of employee claims, the court found that the employee's acquiescence in the arrangement was central to the inquiry of whether a borrowed employment situation existed.  
O'Loughlin
, 216 Ill. App. 3d at 36.  By contrast, the court noted that, in cases involving third-party claims, the employee's acquiescence is "at best an afterthought."  
O'Loughlin
, 216 Ill. App. 3d at 36; see also 
Inmon v. Crane Rental Services, Inc
, 205 Ariz. 130, 134 n.3, 67 P.3d 726, 730 n.3 (Ariz. App. 2003), citing 3 A. Larson, 
Larson's Workers' Compensation Law
 
§
67.02(1) (2001)
 (
"The requirement of consent represents a significant difference between the [two situations.] ***  No such requirement exists in an analysis of the [latter], in part because a worker's right to bring suit is rarely at issue in such cases
"); 
Brown v. Labor Ready Northwest, Inc.
, 113 Wash. App. 643, 649, 54 P.3d 166, 170
 (2002) (
"
[T]he sole concern for vicarious liability (as opposed to workers' compensation immunity) is whether the master accepted and controlled the service that led to the injury. 
Consent
 of the borrowed employee is thus irrelevant in cases where the borrowed employee is not the claimant"
).  Thus, cases support the conclusion that, in the context of third-party claims, the employee's consent is not necessary to the existence of a borrowed-employment situation.

Second, this conclusion is consistent with notions of basic fairness.  If an employee injures a third party, the third party's recovery should not turn on the employee's understanding of whom he or she was working for at the time of the incident.  Rather, the third party should be able to recover against the employer for whom the employee was in fact working.  However, in the context of employee claims, where an employee's own rights and liabilities may turn on the identity of his or her employer (
see, 
e.g.
, 
Lanphier v. Gilster-Mary Lee Corp.
, 327 Ill. App. 3d 801 (2002);
 
Crespo v. Weber Stephen Products Co.
, 275 Ill. App. 3d 638 (1995); 
Palomar v. Metropolitan Sanitary District of Greater Chicago
, 225 Ill. App. 3d 182 (1992)
), the employee ought to be aware of and have a say in the identity of that employer.  
Danek v. Meldrum Manufacturing & Engineering Co.
, 313 Minn. 404, 490, 252 N.W.2d 255, 259 (1977) ("[W]
here an employee's rights are to be affected by his characterization as a loaned employee *** the employee's 
consent
 to the special employment relationship is essential").

To sum up so far, in the context of third-party claims,  a borrowed-employment situation can exist regardless of whether there is a contract between the alleged borrowing employer and the allegedly borrowed employee.  That is, the employee's consent is not essential to a finding that a borrowed-employment situation exists.  Thus, here, the fact that there was no contract between Trooper Gainer and the Authority does not necessarily mean that she was not a borrowed employee of the Authority.  Rather, to make that determination, we must consider whether the Authority had the right to control Trooper Gainer.  See 
1 J. Lee & B. Lindahl, Modern Tort Law: Liability and Litigation §7:23 (2d ed. 2002) (noting that "[t]he 'right to control' has been the most widely accepted test of liability under the loaned servant doctrine").

There are several factors on which Illinois courts have long focused to determine whether an alleged borrowing employer has the right to control an allegedly borrowed employee.  Among these are the manner in which the performance of the employee's duties is directed, the mode of payment, and the right to discharge.
(footnote: 6)  
See 
Gundich v. Emerson-Comstock Co.
, 21 Ill. 2d 117, 123 (1960).  
In addition to these factors, courts have also considered the terms of any written contract between the employers.  
Shoemaker v. Elmhurst-Chicago Stone Co.
, 273 Ill. App. 3d 916, 921-22 (1994).  In particular, courts have looked to whether the general employer had the ability to substitute among employees loaned to the borrowing employer.  
Casey v. E.J. Cattani & Sons Gravel
, 133 Ill. App. 3d 18, 23 (1985) 
("
 'a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time' "), quoting Restatement (Second) of Agency ྷ227, Comment 
c
 (1958).  When considering the above factors, we must bear in mind that, "[i]n the absence of 
evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer."  
Restatement (Second) of Agency §227, Comment 
b
 (1958)
.  Although the borrowed employment question is generally one of fact, when the unrebutted evidence is capable of only one interpretation we must make the determination as a matter of law.
  
Chaney ex. rel. Chaney
, 315 Ill. App. 3d at 827.

2. 
Applying the borrowed employee law

Applying the above standards to this case, we find that Trooper Gainer was not a borrowed employee of the Authority.  This is so for at least five reasons.  First, and perhaps most fundamentally, plaintiff "acknowledges that Gainer was employed by the State Police at the time of the incident."  If that is so, then Trooper Gainer could not have been a borrowed employee of the Authority.  This is because, if one is a borrowed employee, then he or she becomes the employee of the borrowing employer for the performance of the work that he or she was loaned to perform.  Because plaintiff concedes that Trooper Gainer was an employee of the State Police at the time of the accident, plaintiff necessarily concedes that Trooper Gainer was not a borrowed employee of the Authority.  Thus, semantically at least, plaintiff's acknowledgment is determinative.

Second, casting plaintiff's acknowledgment aside, according to the terms of the contract between the Authority and the State Police, the State Police had the power to direct, control, and supervise the manner in which Trooper Gainer performed her duties. Trooper Gainer confirmed this point in an affadavit, and plaintiff has offered nothing to contradict this evidence.  Indeed, plaintiff's only response to this evidence is her suggestion that, by establishing tollway regulations (like the speed limit, perhaps), the Authority could "exercise supervision and control" over the 
manner
 in which Trooper Gainer performed her duties.  Simply put, that is absurd.  Thus, the unrebutted evidence establishes that the State Police, not the Authority, had the power to direct and control the manner in which Trooper Gainer performed her duties.  See 
Raintree Homes
, 209 Ill. 2d at 262 (
"[w]hen supporting affidavits have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts stated therein are deemed admitted
").

Third, although plaintiff places considerable reliance on the money spent by the Authority in connection with the policing of the tollways, the amount of money spent by an alleged borrowing employer is not dispositive.  See 
Casey
, 
133 Ill. App. 3d at 22
.  Moreover, while it is true that the Authority provided Trooper Gainer with equipment and paid her salary and benefits (including her worker's compensation claim), it is also true that this arrangement was statutorily mandated.  See 20 ILCS 2610/20 (West 2002) 
("[C]ontracts shall provide among other matters for the compensation or reimbursement of the [State Police] by the Authority for the costs incurred by this State with respect to such policing service, including, but not limited to, the costs of: (1) compensation and training of the State policemen ***; and (2) uniforms, equipment, supplies and housing used by such personnel; and (3) reimbursement of such sums as the State expends in connection with payments of claims for injuries or illnesses 
suffered by such personnel in the line of duty").  Plaintiff fails entirely to explain how, by merely complying with applicable law, the Authority and State Police created a borrowed employment situation
.

Fourth, no evidence suggests that the Authority had the power to discharge Trooper Gainer from District 15.  On the contrary, the evidence demonstrates that the State Police had the power to assign, substitute, or discharge officers assigned to District 15.

Fifth, in patrolling the tollway, Trooper Gainer performed the type of duty entrusted to her by her general employer; that is, the duty of policing.  See Restatement (Second) of Agency 
§227, Comment 
b
 
(1957).

In sum, the evidence shows that the State Police, rather than the Authority, had the right to control Trooper Gainer.  Indeed, the only factor that marginally favors a different conclusion, 
i.e.
, that the Authority provided equipment and wages for Trooper Gainer, is  unconvincing in light of the statutory framework that controlled the dealings between the Authority and the State Police.  In short, plaintiff has failed to meet her burden of establishing that a borrowed employment relationship existed here.  See Restatement (Second) of Agency 
§227, Comment 
b
 
(1957); 
see also 
Foster v. Englewood Hospital Ass'n
, 19 Ill. App. 3d 1055, 1060 (1974)
 ("The relationship of employer-employee is not an ephemeral one to be imposed or removed lightly"
).

Because plaintiff has not met her burden of establishing a borrowed employment relationship, the Authority is not vicariously liable for any negligence on Trooper Gainer's part.  This being so, it is unnecessary to consider the Authority's contention that, even if Trooper Gainer was its employee, it did not waive sovereign immunity as to her actions.  Rather, having 
concluded that Trooper Gainer was an employee of the State Police, we turn now to consider whether sovereign immunity applies.

D. Sovereign Immunity

The trial court dismissed plaintiff's claims against Trooper Gainer pursuant to the doctrine of sovereign immunity.  Under the Illinois Constitution of 1970, sovereign immunity exists as the General Assembly provides by law.  Ill. Const. 1970, art. XIII, §4; see also 
Currie v. Lao
, 148 Ill. 2d 151, 157-58 (1992).  Pursuant to this authority, the General Assembly enacted the State Lawsuit Immunity Act, which provides that the State may not be made a defendant in any court except as provided in the Court of Claims Act (705 ILCS 505/1 
et seq.
 (West 2002)).  745 ILCS 5/1 (West 2002).  The Court of Claims Act, in turn, provides that the Court of Claims has exclusive jurisdiction over tort claims for damages against the State.  705 ILCS 505/8(d) (West 2002).  The determination of whether an action is in fact against the State does not necessarily depend on whether the State is named as a party to the action.  
Hickey v. Huber
, 263 Ill. App. 3d 560, 562 (1994).  Rather, the determination turns on whether judgment for the plaintiff could operate to control the actions of the State or subject it to liability.  
Postich v. Hendrichs
, 267 Ill. App. 3d 236, 239 (1994)
.  If so, then the action must be found to be a claim against the State, even if the action is nominally brought against a State employee in his or her individual capacity.  
Currie
, 148 Ill. 2d at 158.  The rationale for this rule is simple: were it otherwise, a plaintiff could circumvent the State's immunity by naming only an individual State employee as the defendant in a lawsuit that could operate to control the State's actions.  
Currie
, 148 Ill. 2d at 158.

To determine whether an action nominally against an individual State employee could operate to control the actions of the State, a court must analyze the source of the duty the employee allegedly breached in committing the act about which the plaintiff complains.  
Hickey
, 263 Ill. App. 3d at 563.  Although this does not mean that sovereign immunity applies merely because the allegedly negligent act occurred while the State employee was acting within the scope of his or her employment, it does mean that sovereign immunity applies if the duty allegedly breached arose solely from that employment.  
Currie
, 148 Ill. 2d at 158-59.  When, as is the case here, the plaintiff alleges negligent operation of a motor vehicle by a State employee, sovereign immunity does not apply if the employee is charged with breaching a duty imposed on him or her as an ordinary driver of a vehicle.  
Currie
, 148 Ill. 2d at 160.   However, sovereign immunity does apply if the manner in which the State employee operated the vehicle is unique to his or her employment.  See 
Currie
, 148 Ill. 2d at 160. When that is the case, a lawsuit directed at the employee's allegedly negligent driving could quite obviously operate to control the actions and policies of the State.  See 
Currie
, 148 Ill. 2d at 158-59.  Again, this will not do.  
Currie
, 148 Ill. 2d at 158, 160.

Here, the undisputed facts show that, at the time of the accident, Trooper Gainer was driving her patrol car in a manner unique to her position as a state trooper.  First, it is undisputed that Trooper Gainer received a dispatch of an accident involving injuries and that State Police policy required her to treat such a call as an emergency.  Second, it is undisputed that, after receiving the call, Trooper Gainer abruptly discontinued a traffic stop and, without issuing a citation, departed for the scene of the accident.  Third, it is undisputed that Trooper Gainer chose the quickest route to the accident scene.  Fourth, it is undisputed that, at the time of the accident, Trooper Gainer was driving south across three lanes of westbound traffic.  She was driving, that is, in a manner authorized for emergency personnel only.  See 625 ILCS 5/11--205(b), (c)(4) (West 2002) ("
The driver of an authorized emergency vehicle, when responding to an emergency call ***, may" 
"[d]isregard regulations governing direction of movement")
.  In sum, the undisputed facts demonstrate that, at the time of the accident, Trooper Gainer was operating her vehicle in a manner unique to her State employment.

Plaintiff offers little to disturb the above conclusion.  She argues that, even accepting all of the above undisputed facts, there is a genuine issue of material fact as to whether Trooper Gainer was acting in a manner unique to her State employment.  To support this contention, plaintiff relies on the lone disputed fact in this case -- 
i.e.
, whether, as Effinger alleged in his suit against Trooper Gainer, Trooper Gainer did not have her flashing lights and siren on at the time of the accident.  That is, as plaintiff sees it, if Trooper Gainer did not have her flashing lights and siren on, it is debatable whether, in responding to an emergency call by driving south across the westbound lanes of Interstate 88, Trooper Gainer was acting in a manner unique to her State employment.

We disagree.  Under section 11--205 of the Illinois Vehicle Code, only authorized vehicles responding to an emergency may disregard regulations governing the direction of traffic movement.  625 ILCS 5/11--205(b), (c)(4) (West 2002) ("
The driver of an authorized emergency vehicle, when responding to an emergency call ***, may" 
"[d]isregard regulations governing direction of movement")
.  More importantly for present purposes, only police vehicles may do so 
regardless of whether their flashing lights and siren are activated
.  See 625 ILCS 5/11--205(d) (West 2002).  In this way, police are not just unique among motorists in general; they are unique among State emergency workers.  So even if we assume that Effinger is correct that Trooper Gainer did not have her flashing lights and siren operating, this does not lessen the conclusion that she was acting in a way unique to her position.  Thus, Trooper Gainer's alleged failure to operate her flashing lights and siren, far from supporting plaintiff's position, in fact undermines it.

In sum, based on applicable statutory provisions, the undisputed facts, and even the lone disputed fact, we believe that, at the time of the accident, Trooper Gainer was acting in a manner unique to her employment by the State.

None of the cases on which plaintiff relies undermines this conclusion.  Indeed, most of those cases do not address sovereign immunity at all; rather, they deal with the 
Local Governmental and Governmental Employees Tort 
Immunity
 Act (745 ILCS 10/1--101 
et seq
. (West 2002)) (Tort Immunity Act).  See 
Zimmerman v. Village of Skokie
, 183 Ill. 2d 30 (1998); 
Aikens v. Morris
, 145 Ill. 2d 273 (1991); 
Carter v. Du Page County Sheriff
, 304 Ill. App. 3d 443 (1999).  While sovereign immunity is jurisdictional and applies to State employees (
Currie
, 148 Ill. 2d at 157-58), 
the Tort Immunity Act applies only to employees of 
local
 governments, such as counties and municipalities, immunizing those employees from suits based on the negligent performance of their duties.  See 745 ILCS 10/1--101.1 (West 2002);
 
Ass'n of Mid-Continent Universities v. Board of Trustees of Northeastern Illinois University
, 308 Ill. App. 3d 950, 954 (1999) ("it is apparent that the legislature specifically enacted *** the Court of Claims Act to remove State institutions and their employees from the umbrella of the Local Governmental and Governmental Employees Tort Immunity Act"); 
Sneed v. Howell
, 306 Ill. App. 3d 1149, 1156 (1999)
.
  
Here, Trooper Gainer is an employee of the 
State
 Police.  Thus, the Tort Immunity Act does not apply to Trooper Gainer, and plaintiff's reliance on cases addressing it is completely misplaced.

Plaintiff does rely on one case that deals with sovereign immunity.  Plaintiff argues that 
Currie
 should control here because it is "directly on point" with the present case. Plaintiff is mistaken. The facts of 
Currie
 are complex, and we go into them here only to show that plaintiff's reliance on that case is mistaken.  The 
Currie
 defendant was a state trooper assigned to patrol Interstate 80.  
Although his patrol area included Will County, the defendant's primary responsibility was to regulate traffic on the highway.  
For example, the defendant did not usually respond to calls in Joliet, which has its own police force to tend to things within the city.

According to the defendant, around 8:45 p.m. on November 25, 1985, he received a call 
that apparently related to an intoxicated man pounding on a trailer-home on Eastern Avenue in Joliet. 
Currie
, 148 Ill. 2d at 155.
  However, according to the Joliet police sergeant in charge of records, there was no record of the call.  
Additionally, although one of the defendant's fellow state troopers testified to overhearing a State Police dispatch directing the defendant and another trooper to Joliet, the second trooper never testified, and no record of the call was produced.  
Even if, as the defendant claimed, a call had come in, it did not appear that it involved an emergency.  
For his part, the defendant at first made contradictory statements about whether he felt the call involved an emergency. 
Then, he admitted he did not believe that it had.
 
Nevertheless, the defendant decided to respond to the call.

The supreme court affirmed the jury verdict against the defendant individually.  
Currie
, 148 Ill. 2d at 168.  
The court began by setting out the framework for its analysis.  First, the court held that sovereign immunity deprived the circuit court of jurisdiction over suits against a State employee only if the employee was charged with breaching a duty that was "imposed on him 
solely
 by virtue of his State employment."  (Emphasis in original.) 
Currie
, 148 Ill. 2d at 159.  
Second, the court noted that claims based on a State employee's negligent operation of a motor vehicle were generally outside the scope of sovereign immunity.  
The reason for this, the court said, was that "negligence that arises from the 
ordinary
 operation of a motor vehicle is based on the breach of the duties every driver owes to every other driver."  (Emphasis added.) 
Currie
, 148 Ill. 2d at 160.
  
However, the court stressed that there were exceptions to this general rule. 
Specifically, it stated that, "in some circumstances, a State employee's manner of operating a vehicle may be so unique to his employment that a lawsuit aimed at his negligent driving could operate to control the actions and policies of the State."  
Currie
, 148 Ill. 2d at 160, 
citing 
Campbell v. White
, 207 Ill. App. 3d 541 (1991).

The court concluded that such circumstances were not present on 
Currie
's "particular facts."  
Currie
, 148 Ill. 2d at 166.
  To begin with, the court said, there were no records that, at the time of the accident, the defendant was responding to a call for assistance.  
And even assuming he was, doing so was not part of his normal and official duties.  
The 
defendant was a state trooper responsible for dealing with traffic on the interstate; responding to a minor drunken disturbance in Joliet was the province of the Joliet police.  
Further, even assuming the defendant was responding to a call, and even assuming he had any real business doing so, there was no evidence that the call had involved an emergency.  
Indeed, taken together, the defendant's actions negated any suggestion that that was the case
. 
The court concluded that at the time of the accident the defendant was not engaged in anything unique to his position.  
On the contrary, he was basically just driving along.  See 
Currie
, 148 Ill. 2d at 164.

Currie
 is almost completely distinguishable from the present case.  Here, unlike in 
Currie
, it is undisputed that Trooper Gainer received a call for assistance.  Moreover, here, unlike in 
Currie
, the undisputed evidence establishes that Trooper Gainer was responding to an emergency.  Again, this includes 
the undisputed fact that State Police policy required Trooper Gainer to treat as an emergency a call of an accident with injuries; that, after receiving the call, Trooper Gainer abruptly discontinued a traffic stop and took off on the quickest route to the accident scene; and that she did so in a manner statutorily authorized for emergency responses (see 625 ILCS 5/11--205(b), (c)(4) (West 2002)).  
The lone disputed fact--that is, that Trooper Gainer may not have had her flashing lights and siren on--cannot undermine all of this undisputed evidence.  This is especially so since, as a police officer, Trooper Gainer was uniquely privileged to respond to emergencies without her flashing lights and siren on.  See 625 ILCS 5/11--205(d) (West 2002).  Further, here, unlike in 
Currie
, responding to such emergencies was part of Trooper Gainer's normal duties.  In sum, 
Currie
 is very different from the present case.  Thus, 
Currie
 does not undermine the conclusion that sovereign immunity applies here.

Other cases also support this conclusion.
  For example, in 
Postich v. Henrichs
, 
267 Ill. App. 3d 236 (1994), 
the plaintiff collided with the defendant police officer's squad car while the defendant was responding to a report that a man with a gun was in the area.
  The plaintiff filed suit in circuit court, and the defendant argued that sovereign immunity deprived the circuit court of jurisdiction.  See 
Postich
, 267 Ill. App. 3d at 236-37.  T
he circuit court rejected that argument and entered judgment against the defendant.  
This court vacated the judgment.  
Applying 
Currie
, this court reasoned that the situation at hand involved an emergency and that responding to the call was part of the defendant's official duties.  
Moreover, although this court noted that the defendant had his flashing lights and siren on, it focused on the fact that a police officer responding to an emergency may drive in a manner not permitted to ordinary citizens.  
This court concluded that sovereign immunity applied.  See 
Postich
, 267 Ill. App. 3d at 244.

Likewise, in the present case, Trooper Gainer was responding to an emergency call, which was part of her official duties.  Further, in doing so, she was driving in a manner unique to her position.  Thus, here, like in 
Postich
, sovereign immunity applies.

Our analysis of the case law in this area ends with a case the supreme court in 
Currie
 called "instructive" on the sovereign immunity issue.  
Currie
, 148 Ill. 2d at 164.  In 
Campbell v. White
, 207 Ill. App. 3d 541 (1991
), the appellate court concluded that sovereign immunity applied when, while pursuing speeders, the defendant state trooper ran over the plaintiff's decedent.  
The defendant had not activated his flashing lights and siren during the pursuit.  
Campbell
, 207 Ill. App. 3d at 551.   This was permitted under police policy, and the court concluded that, to the extent the plaintiff complained of the defendant's failure to activate his flashing lights and siren, the plaintiff was challenging that policy.  
As the court noted, that is precisely the kind of suit sovereign immunity does not allow the circuit court to hear.  See 
Campbell
, 207 Ill. App. 3d at 550.

So too in the present case.  Here, plaintiff alleges Trooper Gainer was negligent in, among other ways, failing to operate her flashing lights and siren. However, as discussed above, pursuant to statute, police officers responding to an emergency need not operate their flashing lights and siren.  See 625 ILCS 5/11--205(d).  Thus, to the extent plaintiff complains about Trooper Gainer's alleged failure to operate her flashing lights and siren, plaintiff is attacking State policy as contained in that statute.  See 
Campbell
, 207 Ill. App. 3d at 551
.  
Thus, as in 
Campbell
, sovereign immunity applies here.

Plaintiff attempts to avoid this conclusion by contending that Trooper Gainer "wasn't involved in a high-speed chase or a situation which required her acting in a less than safe manner."  In support of this argument, plaintiff notes that, having received a call indicating only an accident with injuries, Trooper Gainer did not know the extent of the injuries involved.

There are at least two serious problems with this argument.  First, it directly implicates State Police policy and therefore suffers from the same flaw as plaintiff's argument about the flashing lights and siren.  According to the State Police policy manual, an "Emergency call" is an "incident or call in which the possibility of death, personal injury, the apprehension of suspected offenders, or the loss or destruction of property exists and a rapid response *** may reduce the seriousness of the incident."  The manual defines "High-speed vehicle response" as "the operation of an emergency vehicle at speeds in excess of the speed limit when responding to an emergency call."  Thus, State police policy treats high-speed pursuits the same as other emergencies, including calls of accidents with injuries.  Consequently, to the extent plaintiff complains about Trooper Gainer's responding to a call of an accident with injuries as she would to a call to pursue a fleeing suspect, plaintiff's complaint is directed at
 State Police policy.  See 
Campbell
, 207 Ill. App. 3d at 551.

Second, and more elementally, plaintiff's argument makes no sense.  Plaintiff appears to suggest that if a police officer does not know the extent of injuries involved in an accident, then he or she is not justified in treating the situation as an emergency.   In fact, the opposite may be true.  If the officer knows the extent of the injuries, he or she might have less reason to consider the call an emergency.  Here, Trooper Gainer was told injuries were involved. The State Police  policy implies that if injuries are involved, the trooper is to assume the worse and to arrive at the scene as soon as possible to minimize the effects of the accident. In any event, the fact that she was unaware of the extent of the injuries does not mean she should have treated the situation as something less than an emergency.  That is not only foolish, it is dangerous.

To summarize, although nominally against Trooper Gainer individually, plaintiff's claim is in fact against the State. The undisputed evidence establishes that at the time of the accident Trooper Gainer was responding to an emergency call, which was part of her normal and official duties, and therefore was acting in a way unique to her position
.  Plaintiff has failed to cite any case that undermines this conclusion.  As a result, the doctrine of sovereign immunity mandates that, if plaintiff is to bring her suit at all, she must bring it in the Court of Claims.  Thus, the trial court properly granted Trooper Gainer's motion to dismiss.  Because we conclude that sovereign immunity deprived the circuit court of jurisdiction, we do not consider Trooper Gainer's alternative argument that public official immunity protected her from suit in this case.  Rather, we leave the issue for the Court of Claims.  
See 
Campbell
, 207 Ill. App. 3d at 555 ("
having already decided that [pursuant to sovereign immunity] this case belongs in the Court of Claims, the issue of whether public-official immunity applies to defendant is left to the Court of Claims to decide, 
i.e.
,
 the forum with subject-matter jurisdiction
")
.

III. CONCLUSION

At the time of the accident, Trooper Gainer was an employee of the State Police and not a borrowed employee of the Authority.  Because she was acting in a manner unique to her position, sovereign immunity deprived the circuit court of jurisdiction over plaintiff's suit against her; the proper forum was the Court of Claims.  Thus, for the reasons stated, we affirm the decision of the circuit court of Du Page County, which dismissed plaintiff’s claim pursuant to section 2--619 of the Code.

Affirmed.

HUTCHINSON and GROMETER, JJ., concur.

FOOTNOTES
1:
1
Plaintiff's claims against Effinger are not before the court at this time.

2:
2
Plaintiff originally filed the suit in the circuit court of Cook County; however, venue was transferred to Du Page County.

3:
3
Effinger's suit against Trooper Gainer is not at issue here.

4:
4
To be precise, Trooper Gainer moved to dismiss pursuant to section 2--619(a)(1) (lack of subject matter jurisdiction) and the Authority moved to dismiss based on section 2--619(a)(9) (other affirmative matter).  The standard of review is the same.

5:
5
Employees who fit this description have been variously called "borrowed employees,"  "loaned servants," and "loaned employees."  Similarly, several names have been used to refer to employers who loan and borrow these employees.  To keep things simple, we will use the terms "general employer," "borrowing employer, " and "borrowed employee."

6:
6
The alleged borrowing employer need not have the power to dismiss the allegedly borrowed employee from his general employment; but, the alleged borrowing employer must have the power to dismiss him or her from the borrowed employment.  
Chaney v. Yetter Manufacturing Co.
, 315 Ill. App. 3d 823, 829 (2000).